GEORGE M. BAKKER, an Infant, by SIMON BAKKER, His Guardian ad Litem, and Another, Plaintiffs, v. ÆTNA LIFE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, Defendant.

Supreme Court, New York County, June 21, 1933.

*Leo Levy* [*Joseph J. Mack* of counsel], for the plaintiffs.

*James B. Henney* [*Daniel Miner* of counsel], for the defendant.

HAMMER, J. Plaintiffs, an infant and his father, obtained judgments against James D. Ryan, insured by the defendant, the former in the sum of $30,000 for injuries and the latter for $4,000 for loss of services. Both claims arose out of the same automobile accident. Interest and costs have been added to each judgment.

In this action plaintiffs seek to recover from the defendant so much of their respective judgments as is covered by the defend-

ant's liability policy. Plaintiffs claim that they are entitled in the infant's action to the sum of $10,000 and in the father's action to the sum of $4,000, with costs and interest in each case.

The defendant contends that it is liable in no event to a sum exceeding $5,000, and has made an offer of $4,584.11 in favor of the infant plaintiff and $588.24 in favor of the father. These amounts were made up by prorating the total of the verdicts rendered in both cases, to wit, $34,000, against the sum of $5,000, the limit of liability claimed by the defendant, and adding the costs in the infant's action. This offer was not accepted by plaintiffs. The motion is for summary judgment. The principal facts are conceded. The court is called upon to construe the contract. The defendant does not question the practice pursued or the court's power upon this motion to settle the questions, which are purely of law. The policy in question was issued May 8, 1929, and expired May 8, 1930. On May 8, 1930, a renewal certificate was issued which expired May 8, 1931. The accident resulting in the judgments herein occurred on April 14, 1931, within the policy period. At the time the policy was issued the insured James D. Ryan was the owner of an Overland 1927 landau automobile. On May 9, 1930, the insurance was extended to cover an additional automobile described as a 1930 Nash sedan. The amount of the liability in respect of persons in the policy covering the Overland automobile was " Limit 1 person $5,000, limit 1 accident $10,000." When the coverage was extended to the Nash automobile the amount of liability in respect of persons was increased to " Limit one person $10,000, limit one accident $20,000."

The accident occurred while the Nash automobile was being operated.

In connection with the coverage of the Nash automobile there is an indorsement attached to the policy entitled " More automobiles than operators endorsement " effective as of May 9, 1930, which reads as follows: " In consideration of the reduced premium rates at which this policy is written and of the statement made by the assured that he does not own more automobiles than those described in the policy, and that there are not to be a greater number of persons who operate such automobiles than those named in this endorsement without notice to the Company and payment of proper additional premium therefor, it is agreed that the automobiles described herein shall be personally driven only by James D. Ryan or by any person within the age limit provided by the policy when accompanied by such named driver. *If the Company, by virtue of the Statutes of the State where this policy is issued, pays any loss under this policy which has resulted directly*

*or indirectly from the violation of the provisions of this endorsement, the assured agrees to reimburse the Company to the extent of such loss."*

(Part italicized hereinafter referred to as second clause.)

It appears that at the time of the accident the said James D. Ryan was not driving the said Nash automobile nor was he accompanying the driver of the same. The automobile was being operated at the time by one Kirschner, a friend of the insured, apparently with the permission, express or implied, of the said Ryan. The defendants declined to accept the claims upon which suits have been brought until the said Ryan had executed a stipulation which is attached to the amended answer herein and which in substance is an admission by Ryan of the breach of the aforementioned provision of the policy and which further provides that the defendant recognized the possible liability to the plaintiffs by virtue of the New York Financial Responsibility Statute, an indorsement in respect of which is attached to the policy, and in which stipulation it was agreed that the acceptance of the claims by the company was not to be deemed a waiver by it of the breach of said condition by its assured Ryan.

Plaintiff urges that the "more automobiles than operators endorsement" clause is ineffectual to save the company from liability in view of section 109 of the Insurance Law of which it is in violation. Defendant contends that said clause is merely a limitation of its liability and not in violation of the said section, relying upon *Brustein* v. *New Amsterdam Casualty Company* (255 N. Y. 137) and *Lavine* v. *Indemnity Insurance Company* (260 id. 399), in which it was in effect held that the provisions of section 109 of the Insurance Law do not prevent limitation of coverage within the statute.

It would appear from an analysis of this indorsement that it is directed to the use of the automobile therein described and confines its operation to the named assured or to "any person within the age limit provided by the policy when accompanied by such named driver," thereby limiting and controlling the occasions and conditions of the operation of such automobile. It thus narrows the number of opportunities for the happening of the hazards insured against. As a consequence it is apparent that fewer losses are likely to result and the number of claims will be lessened and the loss ratio made smaller. The premium charged for this type of coverage is, therefore, lower than that charged for insurance without such restriction.

It may very well be that the result sought, *i. e.*, limitation of the operation of the car either by the insured personally or by such others (as are referred to above and described in the indorsement)

only when the insured is in the car, would not in and of itself violate the statute. That clause does not seem to have for its ostensible purpose a limitation of defendant's liability contrary to statute. What the real purpose of that and other clauses was may be found from the position taken in this action that liability was limited by the contract of insurance. The clauses referred to are: The Second Clause in the More Automobiles than Operators Endorsement (supra), New York State Endorsement, subdivision C, reading as follows: " (c) It is further provided that the assured or any other person covered by the policy shall reimburse the Company for payments made on account of any accident, claim or suit involving a breach of the terms, provisions or conditions of the policy, which payments the Company would not have been obligated to make under the provisions of the policy independently of this endorsement or of the provisions of said article " — and Financial Responsibility Laws Endorsement Non-Resident Coverage: " The terms of the policy shall remain in full force and effect and be binding between the Company and the assured. If, however, the assured or any other person covered by the policy violates any of the terms or conditions of the policy and the Company shall be obligated to pay and shall pay a loss hereunder which it would not have paid but for the requirements of such law and this endorsement, then the assured or any such person shall reimburse the Company to the extent of such loss."

These appear to manifest an attempt to circumvent the prohibition of the statute. Any violation or attempt is met, however, by the further provision that such policy shall be held valid and deemed to include the provisions of the statute.

Insurance is a contract of indemnity generally for the benefit of the insured and those in privity with him. The statute upon the grounds of sound public policy extends the indemnity against liability arising from the negligent operation of automobiles to and for the benefit of persons injured.

The policy brings into being a fund to pay the damages which may be awarded. In the very act of creation, the clauses referred to seek to transfer the liability imposed by the statute upon the company back to the insured, and thus deaden the vitality of the contract and destroy it as the indemnity to the insured required under the spirit if not the letter of the statute. The statute resuscitates the indemnity at least for the benefit of the injured.

That the insurance company at the time the policy was written and renewed with the attached indorsements did not do more in its own mind than merely question the possibility of escaping liability under the statute appears from the three clauses referred to above.

If the company was sure of the position now asserted of no liability beyond $5,000, there was no reason to provide for reimbursement from the assured beyond that amount. That the minds of the parties to the policy met upon the assumption of liability by the defendant company to and for the benefit of an injured party such as are the plaintiffs here, is conclusively established by other clauses of the " Endorsement — New York State," which reads as follows: " Endorsement — New York State. Pursuant to the requirements of Chapters 639 and 534 of the Laws of 1924, State of New York,* the insurance provided by. this policy against liability for personal injuries or death shall cover the liability of the owner of the motor vehicle therein described for negligence in its operation, in the business of such owner or otherwise, by any person legally using or operating the same with his permission, express or implied, to the extent that liability is imposed upon him by said laws."

From this it would appear that the defendant has expressly brought the policy within the provisions of the statute.

In respect of the father's claim for loss of services, the defendant urges that such a loss is, by the terms of the policy, to wit, bodily injuries, expressly excluded from the coverage thereunder, relying upon *Brustein* v. *New Amsterdam Casualty Company (supra)*. An examination of the policy and the application attached thereto, and the several indorsements thereon, discloses that the words " bodily injuries " and " personal injuries " are used, and appear in different places, to describe the loss insured against. These words have different meanings; they are not synonymous. " Personal injuries " includes loss of services, while " bodily injuries " does not. (*Brustein* v. *New Amsterdam Casualty Company, supra; Psota* v. *Long Island R. Co.*, 246 N. Y. 388; General Constr. Law, § 37-a.)

Clause A of the application for insurance reads as follows: " A. Application is made for combined automobile insurance to be issued severally by the Ætna Life Insurance Company and the Ætna Casualty and Surety Company against the following risks as the same are defined in said companies' policies, subject to the general conditions imprinted upon the reverse hereof and to all special conditions contained in or endorsed by said policies and to amounts not exceeding the amounts of insurance herein specified as follows: "

In the schedule of clauses immediately following the above, clause 5 reads as follows: " (5) Liability for *Personal Injury*. Limit one person $5,000; limit one accident $10,000."

The main portion of the policy of the company contains the following: " In consideration of the declarations in the application, copy of which is attached and made part hereof, and of the premium

* See Insurance Law, § 109; Vehicle and Traffic Law, § 59.

provided in said application, the Ætna Life Insurance Company, hereafter called the company, does hereby insure the assured named herein * * * against the following risks:

" Clause 5 — Liability for personal injuries, loss and/or expense resulting from claims upon the assured on account of *bodily injuries* and/or death accidentally suffered or alleged to have been suffered by any person * * * by reason of ownership or operation of the described automobile, provided the company's liability for loss on account of an accident resulting in *bodily injuries* and/or death to one person is limited to the sum stated in Clause 5 of Paragraph A of said application, subject to the same limit for each person, the total liability for loss on account of any one accident is limited to the sum stated in Clause 5 of said Paragraph A."

Under the special conditions the following appears: " Cost of defense and interest. (a) In addition to the limits of liability on account of claims for *injuries to persons*, the company shall also pay the expense of litigation," etc.

In paragraph 7 of the " General Conditions " it is stated: " vii. Claims and suits against insured. Upon the occurrence of an accident covered hereby and involving *personal injuries* and/or death * * * the assured shall give immediate written notice thereof * * * to the company or its duly authorized agent."

In the renewal certificate in the schedule set out immediately following the consideration clause, the limits of liability clause number 5 is as follows: Liability for *personal injury*. Limit one person $5,000; Limit one accident $10,000."

In the " Change in Limits Endorsement " the coverage shown in Clause 5 is " Liability for * * * Limit one person $10,000; *Personal injury* limited to one accident $20,000."

In the Financial Responsibility Laws indorsement non-resident coverage it is stated that " This amendment shall apply only to the hazards of liability for *personal injuries* or death or liability for property damage covered by this policy."

In the New York State indorsement by which the policy was amended to conform with the requirements of the Vehicle and Traffic Law the following is stated: " The policy to which this endorsement is attached is amended to conform with the requirements of * * * of the Vehicle and Traffic Law * * * of the State of New York * * * as respects any liability for *bodily injuries* or death," and further on it provides: " Pursuant to the requirements of Chapters 639 and 534 of the Laws of 1924 the insurance provided by this policy against liability for *personal injuries* or death shall cover."

In *Halsted* v. *Globe Indemnity Company* (258 N. Y. 176, at pp. 179, 180) the court, in determining the question whether a transfer

from certain heirs to a corporation formed by them to take over the property was a " sale " of property within the meaning of a clause in a lease and in a bond given as security for its faithful performance, providing that the bond shall be canceled upon the sale of the property and the surety thereby released, held that the words " sale " and " transfer " are not synonymous. The word " sale " was held to be a technical term which had been defined. In the course of the opinion the court stated: " In construing any contract we are not confined to the strict meaning of legal terms. The intention of the parties must be sought for in the language used. To understand the language we may put ourselves in their place and discern if possible the objects they had in view and the motives which dictated their choice of words."

The intention of the parties is primarily to be sought in the language of the instrument and in this case is to be ascertained from the words of the contract alone. It is well settled that a policy or contract of insurance is to be construed liberally in favor of the insured and strictly as against the company. The contract was written or prepared by the company. The insured had no voice in the selection or arrangement of the words employed. It is to be assumed that the language of the contract was deliberately selected by defendant. Therefore, the ambiguity or uncertainty therein rests with it. Considering and construing the contract as a whole, it would appear that while it may have been the intention of the defendant to limit the recovery to " bodily injuries " and not to include all injuries to persons or personal injuries, the language employed is not sufficiently plain and clear to express such intent. While the term " bodily injury " does not include all injuries to persons, or personal injuries, as the term is defined, it is apparent that the term " personal injuries " in its broadest sense comprehends bodily injuries.

In *Janneck* v. *Met. Life Ins. Co.* (162 N. Y. 574, 577) WERNER, J., writing for the court, stated: " Insurance contracts, above all others, should be clear and explicit in their terms. They should not be couched in language as to the construction of which lawyers and courts may honestly differ. In a word, they should be so plain and unambiguous that men of average intelligence who invest in these contracts may know and understand their meaning and import." Applying that test and the rules of construction hereinbefore stated, it follows that the plaintiffs must prevail. Accordingly, the plaintiffs are entitled to summary judgment in the following amounts: (1) As to the plaintiff George M. Bakker, an infant, etc., $10,172.35 and interest from March 1, 1933. (2) As to the plaintiff Simon Bakker, $4,000 and interest to be computed from March 1, 1933. Motion for summary judgment is granted. Settle order.

Italics mine.